IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| SHARON WHITE, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v.                                              ) | Case No. CIV-20-155-RAW-SPS |
| ) | |
| KILOLO KIJAKAZI, ) | |
| Acting Commissioner of the Social ) | |
| Security Administration,¹                ) | |
| ) | |
| Defendant.           ) | |

## REPORT AND RECOMMENDATION

The claimant Sharon White requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). She appeals the Commissioner's decision and asserts the Administrative Law Judge ("ALJ") erred in determining she was not disabled. For the reasons set forth below, the decision of the Commissioner should be REVERSED and the case REMANDED for further proceedings.

**Social Security Law and Standard of Review**

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security

---

[1] On July 9, 2021, Kilolo Kijakazi became the Commissioner of Social Security. In accordance with Fed. R. Civ. P. 25(d), Ms. Kijakazi is substituted for Andrew M. Saul as the Defendant in this action.

Act "only if h[er] physical or mental impairment or impairments are of such severity that [s]he is not only unable to do h[er] previous work but cannot, considering h[er] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]" 42 U.S.C. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[2]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938). *See also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the

---

[2] Step One requires the claimant to establish that she is not engaged in substantial gainful activity. Step Two requires the claimant to establish that she has a medically severe impairment (or combination of impairments) that significantly limits her ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or her impairment *is not* medically severe, disability benefits are denied. If she *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, she is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that she lacks the residual functional capacity ("RFC") to return to her past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given her age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of her past relevant work or if her RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

Commissioner's. *See Casias v. Secretary of Health & Human Services*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951). *See also Casias*, 933 F.2d at 800-01.

### Claimant's Background

The claimant was forty-nine years old at the time of the administrative hearing (Tr. 60). She completed the tenth grade, and the record indicates no findings as to her past relevant work (Tr. 44, 237). The claimant alleges she has been unable to work since December 21, 2017, due to degenerative disc disease, arthritis in the spine, generalized anxiety disorder, diabetes, bone spurs in her back, complications with her legs, tachycardia, and emphysema/COPD (Tr. 236).

### Procedural History

On January 8, 2018, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85. Her applications were denied. ALJ Edward Thompson conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated July 8, 2019 (Tr. 35-45). The Appeals Council denied review, so ALJ Thompson's written opinion represents the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

**Decision of the Administrative Law Judge**

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform medium work as defined in 20 C.F.R. §§ 404.1567(c) & 416.967(c), except that she must avoid concentrated exposure to extreme cold, extreme heat, humidity, fumes, odors, dusts, gases, and poor ventilation (Tr. 41). He stated that she had no other physical or mental restrictions/limitations (Tr. 41). The ALJ then used the Social Security Administration's expedited process and made no findings at step four as to the claimant's past relevant work, instead proceeding to step five where he concluded that the claimant was not disabled because there was work she could perform, *e. g.*, sandwich maker, warehouse worker, motor vehicle assembler, marker cashier II, and sales attendant (Tr. 44-45).

**Review**

The claimant contends that the ALJ erred by: (i) failing to consider her need for and use of a nebulizer in formulating her RFC; (ii) failing to properly evaluate her subjective symptoms, particularly her inability to afford medication, spinal impairment, shoulder impairment, medications/symptoms, and (iii) failing to properly evaluate the state reviewing physician opinions. The Court agrees that the ALJ failed to properly assess the claimant's RFC at step four, and the decision of the Commissioner should be reversed.

The ALJ determined that the claimant had the severe impairments of intervertebral disc degeneration and tobacco use, as well as a multitude of nonsevere impairments including, *inter alia*, diabetes mellitus, obesity, chronic obstructive pulmonary disease (COPD), and chronic rhinitis (Tr. 38). The relevant record with regard to the claimant's

-4-

COPD/asthma reflects that the claimant received a diagnosis of COPD, and treatment notes state that it was worse with smoking (Tr. 452). Additionally, the record reflects that bronchodilators relieved her symptoms but that she could not afford an inhaler and did not use one very often (Tr. 452). In November 2017 and again in March 2018, she was prescribed a nebulizer with a prescription for inhalant "by Oral route 1 3 [sic] times a day" (Tr. 523, 697, 703). On November 14, 2017, spirometry was done showing FEV 1 57% wit FEV1/FVC 48%, pre-bronchodilator and FEV1 88% with FEV1/FVC 70% post-bronchodilator (Tr. 707). This prescription was continued through at least December 9, 2018 (Tr. 731-732, 738). On January 22, 2019, the claimant presented to St. Anthony Hospital in Shawnee, Oklahoma and was given a nebulizer treatment (Tr. 1057).

State reviewing physician Craig Billinghurst found on January 30, 2018 that the claimant could perform medium work but that she needed to avoid concentrated exposure to extreme heat and cold, as well as humidity, fumes, odors, gases, poor ventilation, etc. (Tr. 90-91). On March 24, 2018, Dr. Sean Neely affirmed this assessment (Tr. 104-106).

At the administrative hearing, the claimant testified that she was a smoker and still smoking, although she had cut down, and that she was using a nebulizer (Tr. 70-71). She stated, "I use a breathing machine three times a day; inhaler, when needed [] and oxygen, at night" (Tr. 71). When asked if she had been prescribed "a portable or anything like that," she answered, "No." (Tr. 71). Upon further questioning, when asked if she used the nebulizer at set times throughout the day or when she felt the need for it, she stated that she does not use it on a daily basis but when she feels really congested (Tr. 71). She stated that

when she uses the nebulizer, it takes her approximately ten to fifteen minutes (Tr. 71). She also stated that fumes from cleaning supplies caused her difficulty breathing (Tr. 71-72).

In his written opinion at step two, the ALJ stated that the claimant's COPD and chronic rhinitis were nonsevere impairments and in referring to all her nonsevere impairments, stated that they were properly controlled by adherence to recommended medical management and medication compliance, and no aggressive treatment was recommended or anticipated (Tr. 38). At step four, the ALJ summarized the claimant's hearing testimony and much of the medical record. He made no mention of the claimant's COPD, although he did reference one treatment note wherein the claimant had good air movement in the lungs despite some expiratory wheezing (Tr. 43). The ALJ repeatedly noted that the claimant was on no prescribed or over-the-counter medications (Tr. 41-44). As relevant, he found the state reviewing physician opinions persuasive and well-supported by the (unspecified) medical evidence, and adopted their suggested RFC, including the limitation regarding avoiding concentrated exposures (Tr. 43-44). He then ultimately determined that the claimant was not disabled (Tr. 44-45).

As part of her first argument, the claimant contends that the ALJ failed to account for her nonsevere impairment of COPD by failing to account for her need to use a nebulizer throughout the day. Because the ALJ did find that the claimant had other severe impairments, *i. e.*, intervertebral disc degeneration and tobacco use, any failure to find the claimant's additional impairments severe at step two is considered harmless error *at step two* because the ALJ would nevertheless be required to consider the effect of these impairments and account for them in formulating the claimant's RFC *at step four*. *See,*

-6-

*e. g., Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008) ("'At step two, the ALJ must 'consider the combined effect of all of [the claimant's] impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity [to survive step two]. Nevertheless, any error here became harmless when the ALJ reached the proper conclusion that Mrs. Carpenter could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence.") (*quoting Langley v. Barnhart,* 373 F.3d 1116, 1123-24 (10th Cir. 2004)). *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("Once the ALJ finds that the claimant has *any* severe impairment, he has satisfied the analysis for purposes of step two. His failure to find that additional alleged impairments are also severe is not in itself cause for reversal. But this does not mean the omitted impairment simply disappears from his analysis. In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original] [citations omitted].

But here the ALJ erred *at step four* when he failed to account for the claimant's nonsevere impairments as he formulated the claimant's RFC, specifically with regard to her diagnosed COPD and prescription for using a nebulizer three times per day. The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (*e. g.*, laboratory findings) and nonmedical evidence (*e. g.*, daily activities, observations)." Soc. Sec. Rul. 96-8p, 1996 WL 374184, at *7 (July 2, 1996). "When the ALJ has failed to comply with SSR 96-8p because he has not linked his RFC determination with specific evidence in the record, the court cannot

adequately assess whether relevant evidence supports the ALJ's RFC determination." *Jagodzinski v. Colvin*, 2013 WL 4849101, at *2 (D. Kan. Sept. 11, 2013) (*citing Brown v. Commissioner of the Social Security Administration*, 245 F. Supp. 2d 1175, 1187 (D. Kan. 2003)). Here, the ALJ failed to even truly discuss or take into account the claimant's COPD and prescription for nebulizer at all. The Tenth Circuit has previously held that an ALJ commits error when he fails to develop certain details related to the use of a home nebulizer, such as: (i) "whether her nebulizer is portable such that it can be used away from the home[,]" and (ii) the frequency which a claimant would need to use a nebulizer and whether it would be "disruptive to a normal work day and affect her ability to perform the jobs the VE identified and on which the ALJ based his decision." *Klitz v. Barnhart*, 180 Fed. Appx. 808, 810 (10th Cir. 2006). The Commissioner contends that the ALJ made no such error, asserting that *Humble v. Astrue*, 2009 WL 203952, at *3 (W.D. Okla. Jan. 26, 2009), applies. But there, the record reflected that the nebulizer was prescribed solely during three episodes of pneumonia over three years and thus did "not support a claim that Plaintiff was required to use a nebulizer on a continuous, daily basis." *Id.* Here, the claimant's testimony regarding her need for a nebulizer, as well as the record establishing an ongoing prescription for over a year, requires remand for proper consideration. *See Klitz*, 180 Fed. Appx. at 810 (reversing where record reflected the claimant needed the nebulizer two or three days a week and two times per day on those days); *Prather v. Astrue*, 2010 WL 3731184, at *4 (reversing the ALJ's decision where the claimant testified she used a nebulizer three or four times per day for fifteen minutes each and the ALJ failed to include such use in a hypothetical to the VE or in any RFC restrictions). The

Commissioner's decision should therefore be reversed and remanded for further consideration of the effect of her use of a nebulizer for breathing treatments on her RFC and, by extension, her ability to work.

Additionally, the undersigned Magistrate Judge notes that the state reviewing physician opinions were both completed within three months of the claimant's application date and lack much of the record related to her use of a nebulizer. The claimant asserts that these opinions therefore lacked the benefit of probative evidence and the ALJ erred by failing to consider their supportability. For claims filed on or after March 27, 2017, medical opinions are evaluated pursuant to 20 C.F.R. §§ 404.1520c and 416.920c. Under these rules, the ALJ does not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)[.]" 20 C.F.R. §§ 404.1520c(a) & 416.920c(a). Instead, the ALJ evaluates the persuasiveness of all medical opinions and prior administrative medical findings by considering a list of factors. *See* 20 C.F.R. §§ 404.1520c(b) & 416.920c(b). The factors are: (i) supportability, (ii) consistency, (iii) relationship with the claimant (including length of treatment relationship, frequency of examinations, purpose and extent of treatment relationship, and examining relationship), (iv) specialization, and (v) other factors that tend to support or contradict a medical opinion or prior administrative finding (including, but not limited to, "evidence showing a medical source has familiarity with the other evidence in the claim or an understanding of our disability program's policies and evidentiary requirements."). 20 C.F.R. §§ 404.1520c(c) & 416.920c(c). Supportability and consistency are the most important factors in evaluating the persuasiveness of a medical opinion and the ALJ must explain how both factors were

considered. *See* 20 C.F.R. §§ 404.1520c(b)(2) & 416.920c(b)(2). Generally, the ALJ is not required to explain how the other factors were considered. *Id.* However, when the ALJ finds that two or more medical opinions or prior administrative findings on the same issue are equally well-supported and consistent with the record but are not exactly the same, the ALJ must explain how "the other most persuasive factors in paragraphs (c)(3) through (c)(5)" were considered. 20 C.F.R. §§ 404.1520c(b)(3) & 416.920c(b)(3).

The supportability factor examines how well a medical source supported their own opinion with "objective medical evidence" and "supporting explanations." 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). The consistency factor calls for a comparison between the medical opinion and "the evidence from other medical sources and nonmedical sources" in the record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). In this case, the only functional evaluations of the claimant came from state physicians Drs. Billinghurst and Neely, and the ALJ simply stated that the evaluations were persuasive and supported, ignoring the fact that much of the evidence cited by both physicians pre-dated the alleged onset date and failing to address the consistency prong. It was error for the ALJ to "pick and choose" her way through the evidence in this record in order to avoid finding the claimant disabled. *See, e. g., Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."). *See also Briggs ex rel. Briggs v. Massanari,* 248 F.3d 1235, 1239 (10th Cir. 2001) ("Although the ALJ need not discuss all of the evidence in the record, he may not ignore evidence that does not support his decision, especially when that evidence is 'significantly probative.'") [citation omitted].

*See also Clifton v. Chater,* 79 F.3d 1007, 1010 (10th Cir.1996) ("[I]n addition to discussing the evidence supporting his decision, the ALJ also must discuss the uncontroverted evidence he chooses not to rely upon, as well as significantly probative evidence that he rejects.") [citation omitted].

Because the ALJ failed to properly evaluate *all* the claimant's impairments and the opinion evidence of record, the decision of the Commissioner is therefore reversed and the case remanded to the ALJ for further analysis of the claimant's impairments. If such analysis results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether she is disabled.

### Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The Commissioner's decision is accordingly REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 31st day of August, 2021.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**